Vyaire Holding Co. v Westchester Surplus Lines Ins. Co. (2024 NY Slip Op 03801)

Vyaire Holding Co. v Westchester Surplus Lines Ins. Co.

2024 NY Slip Op 03801

Decided on July 11, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 11, 2024

Before: Singh, J.P., Moulton, Gesmer, Mendez, Rodriguez, JJ. 

Index No. 652428/20 Appeal No. 1595 Case No. 2022-05619 

[*1]Vyaire Holding Company, et al., Plaintiffs-Appellants-Respondents,
v
Westchester Surplus Lines Insurance Company, et al., Defendants-Respondents-Appellants, North American Capacity Insurance Company, Defendant-Respondent.

Reed Smith LLP, New York (Bert Wells of counsel), for appellants-respondents.
Cozen O'Connor, New York (Jonathan Toren of counsel), for Westchester Surplus Lines Insurance Company, respondent-appellant.
Mound Cotton Wollan & Greengrass LLP, New York (Jeffrey S. Weinstein of counsel), for Allianz Underwriters Insurance Company, respondent-appellant.
Malapero Prisco & Klauber LLP, New York (Joseph J. Prisco of counsel), for Certain Underwriters at Lloyd's of London, respondent-appellant.
Stewart | Smith, New York (Joseph F. Bermudez of counsel), for respondent.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about November 22, 2022, which denied plaintiffs' motion for partial summary judgment as to liability for breach of contract and sought product recall insurance coverage under a set of policies issued to plaintiffs for the period of March 7, 2018 to March 7, 2019, and granted defendants' motions for summary judgment in part, to the extent of dismissing plaintiffs' second cause of action seeking liability for breach of contract and for coverage under a set of policies issued to plaintiffs for the period of March 7, 2019 to March 7, 2020, unanimously affirmed, without costs.
Defendants issued consumer goods insurance policies on medical devices sold by plaintiffs (collectively, Vyaire). The Year One policy ended on March 7, 2019, at which point the Year Two policy began. Each policy was triggered by an "insured event" discovered in the policy period, provided that Vyaire gave written notice as soon as possible, no later than 30 days after discovery of the event. Additionally, the policies excluded coverage for pre-existing circumstances that Vyaire "knew of or should have known of, prior to the inception of this policy, that caused or could reasonably have been expected to cause . . . an 'insured event' ." "Insured event" was defined as a " 'stock recovery,' market withdrawal or recall" of an insured product that would cause bodily injury or property damage. "Stock recovery" was defined by the policies but "market withdrawal" and "recall" were not.
enFlow, a product insured under the policy, was first approved in 2006. By 2018, it was used in many different countries. Prior to March 2019, there were no reports of patient injury due to aluminum toxicity. In February 2018, however, Vyaire learned of a (then-unpublished) study indicating that enFlow may cause aluminum toxicity when used with a certain infusion. Over the following months, Vyaire corresponded with medical device regulators in two European Union (EU) countries regarding the safety of enFlow. After conducting its own testing, Vyaire concluded that enFlow appeared to release levels of aluminum that would be unsafe for certain patients, but that this release was actually of a nontoxic complex formed with malate in the infusion. On February 6, 2019, Vyaire learned that the infusion did not contain malate. Rather, it contained lactate, which was commonly used in medical solutions. Vyaire attested that, although it recognized this as a potential safety risk, it believed that a labelling change would be sufficient to resolve that risk.
Others disagreed. In early March 2019, Vyaire learned that many hospitals in the United Kingdom had ceased using enFlow, and two EU regulatory agencies expressed their intentions to take regulatory action. As a result, on March 5, 2019, Vyaire decided to suspend enFlow use in the EU. By March 6, 2019, Vyaire had notified the FDA of this suspension. On March 11, 2019, Vyaire's testing [*2]revealed unacceptable levels of aluminum leaching with many different infusions. On March 12, 2019, Vyaire notified defendants that they were about to issue a world-wide recall of enFlow, and gave notice as to "all responsive policies." On March 13, 2019, Vyaire issued a global recall notification.
Supreme Court properly determined that coverage for Year Two was excluded under the prior notice exclusion. The record in this case established that by March 7, 2019, Vyaire knew or should have known about circumstances that could reasonably have been expected to cause an insured event (see American Med. Alert Corp. v Evanston Ins. Co., 185 AD3d 433, 433 [1st Dept 2020]).
Supreme Court also correctly denied both motions for summary judgment as to the Year One policy.
The policy does not define "recall," which is not necessarily limited to removal of the product from the market (see Foster Poultry Farms, Inc. v Certain Underwriters at Lloyd's, London, 2016 WL 235211, *8-9, 2016 US Dist LEXIS 7629, *22-27 [ED Ca, Jan. 20, 2016, CIV. No. 1:14-953 WBS SAB] [finding "recall" to be ambiguous and interpreting the term to include destruction of product that had not left seller's possession]; Geiser v Simplicity, Inc., 2011 WL 2413668, *4, 2011 US Dist LEXIS 61948, *12-14 [ND W Va, June 10, 2011, No. 5:10CV21] [interpreting "recall" to include provision of replacement parts]). Vyaire presented sufficient evidence to raise issues of fact as to whether, in the context of medical devices, "recall" could include an ongoing process of corrective action other than removal. Vyaire has demonstrated that it began such a process during Year One.
To establish that it satisfied the notification requirement, however, Vyaire would have to prove that it discovered the event no earlier than February 10, 2019, and gave notice as soon as possible (see generally SSBS Realty Corp. v Public Serv. Mut. Ins. Co., 253 AD2d 583, 584 [1st Dept 1998]). Before March 2019, there were no reported injuries due to aluminum toxicity from enFlow, despite its frequent and widespread use. Moreover, no regulatory agency had yet indicated any intention to recall the product. Yet, by that date, Vyaire had engaged in extensive communications with foreign regulatory agencies for approximately a year regarding enFlow's possible aluminum toxicity. Vyaire had also conducted its own testing regarding aluminum leaching. Vyaire knew that an infusion containing lactate, not malate, leached potentially dangerous amounts of aluminum. This ambiguous history raises issues of fact as to whether Vyaire had a reasonable belief, until at least February 10, 2019, that no insured event had occurred (see id.).
We have considered the remaining arguments and found them unavailing.
The Decision and Order of this Court entered herein on February 15, 2024 is hereby recalled and vacated (see M-2024-01580, M-2024-01770 decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT[*3], APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 11, 2024